911 P.2d 542

**Marion HATCH and Marvin Hatch, Plaintiffs–Appellees, Cross Appellants,**

v.

**ARIZONA DEPARTMENT OF TRANSPORTATION, Defendant–Appellant, Cross Appellee.**

**No. 1 CA–CV 93–0490.**

Court of Appeals of Arizona, Division 1, Department C.

July 20, 1995.

Review Denied Feb. 21, 1996.*

---

State's 1977 interpretation of the statute, and only Colonial presently claims that benefit.

* Feldman, C.J., of the Supreme Court, voted to grant the petition for review. Corcoran, J., of

Dale K. Patton, Jr., Winslow, for plaintiffs-appellees, cross appellants.

Grant Woods, Atty. Gen. by Peter C. Gulatto, Asst. Atty. Gen., Transp. Section, Phoenix, for defendant-appellant, cross appellee.

## OPINION

GARBARINO, Judge.

The Arizona Department of Transportation (ADOT) appeals the superior court's judgment vacating the administrative hearing officer's decision that signs owned by Marion and Marvin Hatch violated zoning and spacing regulations. The Hatches filed a cross-appeal of the superior court's denial of attorney's fees. Because we find that the

the Supreme Court, did not participate in the determination of this matter.

superior court erred by admitting evidence of events that occurred subsequent to the administrative hearing, we reverse the judgment and remand to ADOT for rehearing based upon the new circumstances.

## FACTS AND PROCEDURAL HISTORY

Marion and Marvin Hatch operate the Second Mesa Gallery (Gallery) on a parcel of land they own near the interchange of Interstate 40 and State Route 87. The Gallery's business activities include the wholesale and retail distribution of petrified wood, rocks, and Native American Crafts.

Commencing in 1988, eight signs, varying in size, were erected along Interstate 40. On October 22, 1990, ADOT issued notices that the signs were in violation of the statutes regulating outdoor advertising. The Hatches requested a hearing that was ultimately held on February 6, 1991. The ADOT representative, Mr. Christ, testified regarding placement of the various signs and how they respectively violated the regulations.

Marion Hatch testified that three signs had been removed. Both Marion and Marvin Hatch testified regarding contacts they had with ADOT representatives who advised them that a permit was not needed. According to Marvin Hatch, at the time the business was started, its geographical boundaries were defined; however, the Hatches did not have the funds to build everything at once. Marvin stated they had "acres and acres of petrified wood that [they needed] to display and sell for the rock shop," and he testified regarding the plans to display the wood. He also testified regarding an exhibit that depicted trusses where they were going to build a shop to cut and polish the wood.

The administrative hearing officer declined to consider testimony regarding the Hatches' intended future use of the land and found that the signs violated zoning and spacing regulations. The Hatches filed a complaint in superior court and subsequently filed a motion to supplement the record with new and additional evidence, which motion was granted.

On March 5, 1993, over two years after the administrative hearing was held, the matter was heard in superior court. By that time, not only had three signs been removed, but other signs had been repainted and petrified wood had been displayed along the Interstate. The court took the matter under advisement and subsequently issued a decision. The judge noted that he would have affirmed ADOT's decision based upon the facts presented at the administrative hearing. However, because of the delay in the proceedings, the judge considered the facts existing as of the date of his decision and vacated the hearing officer's ruling. ADOT appealed, and the Hatches cross-appealed from the superior court's denial of attorney's fees.

## ISSUES

1. Did the superior court err by permitting the Hatches to supplement the record on appeal?

2. Did the superior court err by allowing evidence of events that occurred subsequent to the administrative hearing?

3. Did the superior court err by substituting its judgment for that of the hearing officer?

4. Did the evidence support the superior court's ruling?

5. Are the Hatches entitled to an award of attorney's fees and costs on appeal?

## DISCUSSION

Although several issues are presented, resolution of the superior court's admission of new evidence is dispositive. ADOT claims that the superior court erred by considering evidence of events that occurred subsequent to the administrative hearing. According to ADOT, the court lacked jurisdiction to consider the Hatches' attempts to validate the signs subsequent to the administrative hearing. The Hatches respond that the express language of Ariz.Rev.Stat.Ann. (A.R.S.) section 12–910(A) permits the court to consider new or additional evidence.

A.R.S. section 12–910(A) provides:

An action to review a final administrative decision shall be heard and determined with convenient speed. The hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to a finding, order, determination or decision of the administrative agency shall be heard by the court, except in the event of a trial de novo or in cases where in the discretion of the court justice demands the admission of such evidence.

We agree that A.R.S. section 12–910(A) expressly gives the court discretion to consider new or additional evidence. However, "[t]here is ... a difference in evidence which was in existence or available at the time of the hearing by the [agency] and evidence that comes into existence after the hearing." *Tucson Elec. Power Co. v. Arizona Corp. Comm'n,* 132 Ariz. 240, 244, 645 P.2d 231, 235 (1982); *see also Cortaro Water Users' Ass'n v. Steiner,* 148 Ariz. 343, 356, 714 P.2d 836, 849 (App.1985), *aff'd,* 148 Ariz. 314, 714 P.2d 807 (1986).

In *Tucson Electric,* our supreme court held "that evidence of events occurring subsequent to [a] Corporation Commission hearing is not admissible." 132 Ariz. at 244, 645 P.2d at 235. The court first reasoned that the superior court was not to usurp the constitutional rate-making prerogative of the Corporation Commission, and second that the proper procedure for consideration of new circumstances was a rehearing by the Commission. *Id.*

■ We find the court's first reason uniquely applicable to Corporation Commission cases. However, the court's second rationale is applicable to this matter. ADOT's hearing officers routinely hear sign violation cases; thus, in making determinations regarding the applicability of ADOT's regulations, they possess a degree of expertise distinctive to that agency. Accordingly, the agency, rather than the superior court, is the appropriate forum for the presentation of new circumstances.

In *Cortaro,* the City of Tucson (the City) filed applications for the drilling of three new wells. 148 Ariz. at 346, 714 P.2d at 839.

Peppertree Ranch, the site of the proposed drilling, was not being served with water by the City at the time of the application. *Id.* After a hearing in 1981, the Department of Water Resources issued a decision granting the well permits, subject to three conditions, and finding Peppertree Ranch to be part of the City's service area. *Id.* at 346–47, 714 P.2d at 839–40. An action was subsequently filed in superior court. *Id.* at 347, 714 P.2d at 840.

After some additional procedural matters, which are irrelevant to the appeal presently before us, the superior court in *Cortaro* entered judgment on September 29, 1983. *Id.* at 348, 714 P.2d at 841. The judgment in part denied Cortaro's motion to strike an affidavit submitted by the City, which related events that occurred after the City's application. *Id.* Stating that "[the City] had caused to be built a 'water main extension' from an existing [City] main to Peppertree Ranch and had started delivery of water to Peppertree through this extension as of August 25, 1983," the affidavit attempted to show that Peppertree Ranch had become a part of the City's service area. *Id.* at 356, 714 P.2d at 849.

Cortaro argued that the affidavit should not have been admitted because "it was new evidence occurring 1½ years after the close of the administrative record." *Id.* The City argued that the extension of the pipeline brought Peppertree Ranch into the City's service area and rendered the appeal moot. *Id.* This Court expressed no opinion as to the validity of the City's argument, but we agreed "that the affidavit should not have been allowed since it raise[d] issues which [were] foreign to the proceedings." *Id.* We indicated that the effect of the pipeline could be considered in new proceedings before the Department. *Id.*

Similarly, evidence of the Hatches' subsequent placement of the petrified wood was "foreign" to the ADOT hearing. The Hatches testified regarding their development plan, but the issue was whether the signs, under the circumstances existing at the time of the administrative hearing, violated the applicable regulations. Actual placement of

the wood had not occurred and, therefore, could not have been considered by the hearing officer.

 In *Cortaro* and *Tucson Electric*, both this Court and our supreme court have placed limitations on the admission of new or additional evidence. Moreover, A.R.S. section 12–910(A) refers to "new or additional evidence in support of or in opposition to a finding, order, determination or decision of the administrative agency." Evidence of events that occur subsequent to an administrative hearing cannot "support" or "oppose" a hearing officer's decision that was based upon circumstances existing at the time of the hearing. Thus, we follow *Tucson Electric* and hold that new evidence that was available at the time of the administrative hearing but otherwise not considered is admissible; however, evidence of circumstances or events that arise subsequent to proceedings before the administrative agency is inadmissible in superior court to determine the accuracy of the agency's decision. Further, the parties may not impeach the agency's decision with evidence that developed after the agency's ruling.

Any ruling to the contrary would effectively eliminate the function of the administrative hearing officer. Claimants could take remedial action subsequent to administrative hearings and present an entirely new case to the superior court, as happened here. We do not believe that was the intent of our legislature in A.R.S. section 12–910(A).

We agree with the superior court judge that this case "languished" far too long in superior court.[1] Pursuant to A.R.S. section 12–910(A), this matter should have been resolved "with convenient speed." The superior court judge attempted to remedy the delay by avoiding a remand to ADOT. However, the function of the administrative agency cannot be usurped by the superior court.

---

1. The superior court judge noted that "[t]he Hatchs [sic] and the state should not have had to wait all this time. We have a court system that simply has not been responsive to the needs of the litigants...." The State indicated that the

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the superior court. Because this matter languished far too long in superior court and because the decision was based on facts not now existing, we grant the relief requested by the State at oral argument and remand to ADOT for rehearing based on the facts as they now exist.

FIDEL and GERBER, JJ., concur.

---

delay was partially because of another judge's illness.

