278 P.3d 314

**STAGECOACH TRAILS MHC, L.L.C., Plaintiff/Appellee,**

v.

**CITY OF BENSON, a municipal corporation; City of Benson Board of Adjustment, a body politic; and Brad Hamilton, Zoning Administrator for the City of Benson, Defendants/Appellants.**

No. 2 CA–CV 2011–0085.

Court of Appeals of Arizona, Division 2, Department B.

May 31, 2012.

---

Lewis & Roca, LLP By John C. Hinderaker and Jeffrey L. Sklar, Tucson, Attorneys for Plaintiff/Appellee.

Michael J. Massee, Benson City Attorney, Nogales, and Lasota & Peters, PLC By Jeffrey T. Murray, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

ESPINOSA, Judge.

¶ 1 In this zoning enforcement action, defendant/appellant City of Benson appeals from the superior court's reversal of the Benson Zoning Administrator's denial of a permit for installation of a mobile home at a manufactured home park owned by plaintiff/appellee Stagecoach Trails MHC.[1] For the following reasons, we vacate in part, reverse in part, and affirm in part.

### Factual Background and Procedural History

¶ 2 The facts essential to the resolution of this appeal are undisputed. We review issues of law de novo. *Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, ¶ 12, 36 P.3d 1208, 1212 (App.2001). In 1997, the city amended the Benson Zoning Regulations (B.Z.R.) to introduce, inter alia, extensive changes to § 16, which governs manufactured home parks. The changes included modification of minimum space requirements, including setback requirements, for parks and their internal spaces. The changes became effective in 1998, but the city did not immediately apply these new requirements to parks that had been in operation before the effective date.

¶ 3 In 2003, Jay Kendrick purchased Desert Craft Mobile Home Park, a fifty-unit manufactured home park in Benson. Kendrick renamed the park Stagecoach Trails MHC and began to make improvements, including removing a number of older mobile homes in poor repair and replacing them with newer, often larger ones in better condition. As part of this improvement plan, Stagecoach Trails applied for and was issued permits for thirty-four mobile homes, which were installed in the park between 2003 and 2010. Although none of the park's fifty spaces was large enough to comply with the minimum space requirements of § 16, the city nevertheless issued the required permits.

---

1. We use the terms "mobile home" and "manufactured home" interchangeably.

¶ 4 In December 2009, the city notified by letter all manufactured home park operators in Benson, including Stagecoach Trails, that it planned to begin enforcing the minimum space requirements of § 16 against parks it previously had treated as exempt. The city clarified that it would not apply § 16 retroactively to units that already had been installed, but would enforce its provisions in reviewing any future permit applications.

¶ 5 In January 2010, Stagecoach Trails applied for a permit to install a new mobile home on space 27, which recently had become vacant. On January 25, the zoning administrator denied the application, explaining that space 27 did not comply with several requirements of § 16, including setback and paving requirements. The zoning administrator further explained that when a new structure was moved onto space 27, it would be required to conform to all zoning regulations then in force, including § 16.

¶ 6 Stagecoach Trails appealed the denial to the city board of adjustment, arguing it did not need to meet the requirements of § 16 because the mobile home park was a nonconforming use under A.R.S. § 9–462.02 and B.Z.R. § 18. After hearing testimony and argument, a majority of the board voted to deny the appeal.

¶ 7 In May, Stagecoach Trails filed a two-count special-action complaint in the superior court, seeking review of the board of adjustment's decision and challenging the validity of § 16. Specifically, Stagecoach Trails alleged that because the city had not complied with the notice and hearing requirements of A.R.S. § 9–462.04(A)(4) and (5) in adopting § 16, that provision was invalid. It further alleged that even if § 16 were valid, it applied only to newly developed manufactured home parks and could not be applied retroactively to existing parks. The complaint sought a declaratory judgment that § 16 was void,[2] an order "in the nature of [a] writ of mandamus" directing the zoning administrator to "process and/or grant" the permit ap-

plication, and an order reversing the board of adjustment's decision and directing the zoning administrator not to apply § 16 in processing the application for space 27.

¶ 8 The parties thereafter filed numerous motions, including cross-motions for summary judgment. Meanwhile, notwithstanding the pending litigation, in July the zoning administrator again reviewed the permit application for space 27, stating in a letter the application had been considered "without regard to the requirements of Section 16 [ (1998) ]." The zoning administrator concluded Stagecoach Trails still was not entitled to a permit because the site plan failed to show space 27 met, inter alia, setback requirements imposed by regulations other than § 16, including the version of that section in effect before 1998. The city then filed a pleading titled, "Suggestion of Mootness as to the Equitable Relief Requested in Count I," which the superior court denied. In August, the court granted summary judgment in favor of Stagecoach Trails, finding § 16 had been enacted without strict adherence to the notice requirements of § 9–462.04 and was therefore void.

¶ 9 On September 14, Stagecoach Trails filed a supplemental special-action complaint in superior court, alleging that the grounds cited in the July letter were not sufficient to justify the denial of the permit application and requesting that the court direct the zoning administrator to issue the permit. Stagecoach Trails also sought a declaratory judgment "determining the proper application of all provisions of the Zoning Regulations raised by the Zoning Administrator to deny the permit application."

¶ 10 On September 15, the zoning administrator sent another letter denying the permit application on substantially the same grounds as stated in the July letter, except the September letter included the additional ground that space 27 lacked an improved parking space.[3] The September letter also invited

---

**2.** The city does not challenge the availability of declaratory relief in this procedural posture, and we need not address the issue because the superior court could properly consider the board of adjustment's reliance on § 16 in exercising its statutory authority to "affirm or reverse, in

whole or in part, or modify the decision" of the board. See A.R.S. § 9–462.06(K).

**3.** The January denial letter had pointed to the lack of an improved parking space as a ground for denial; it is unclear why the zoning adminis-

Stagecoach Trails to apply for a variance if it could not meet any of the conditions listed. Stagecoach Trails instead filed a second supplemental special-action complaint in superior court on September 23. The court allowed both supplemental complaints as amendments to the original complaint pursuant to Rule 15(d), Ariz. R. Civ. P., based on its determination that it had "continuing jurisdiction" over the dispute.

¶ 11 On December 21, the superior court held an evidentiary hearing. The city argued at the outset "the Court's review is limited to the record that was before the Board of Adjustment" and objected to the hearing. Although the court questioned the need for an evidentiary hearing "on most of the[ ] issues," it nevertheless went forward with the hearing.

¶ 12 On December 29, the superior court issued a signed minute entry reversing the board of adjustment's decision. It concluded Stagecoach Trails had exhausted its administrative remedies, "as all of the relevant issues considered at the December 21, 2010, hearing were likewise discussed and considered at the . . . Board of Adjustment hearings[,] including the 'grandfather' issue and its application to the specific facts and circumstances as they relate to the denial of a permit for Space 27." The court further concluded, "Referral back to the Board of Adjustment would not promote judicial economy and is not necessary as a matter of law . . . since this Court has continuing jurisdiction over all issues related to the City's denial of a permit for Space 27." It also stated, "[T]he City had an obligation to raise all defenses available to it relating to the grandfathering issue at the time of the Board of Adjustment hearings or such defenses or issues are waived on appeal."

¶ 13 The court affirmed its prior ruling invalidating § 16 and concluded the city was obligated to issue a permit for space 27 because Stagecoach Trails had a "due process right to continue a nonconforming use." The court granted relief "in the nature of a writ of mandamus," directing the zoning administrator "to perform his ministerial duty and grant the permit application for Space 27"

and awarding Stagecoach Trails attorney fees and costs. The city timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A) and 12–2101(A)(1).

## Discussion

### Superior Court Jurisdiction

¶ 14 At the outset, the city contends the superior court did not have jurisdiction over the supplemental complaints because the issues Stagecoach Trails raised in response to the July and September letters had not been considered by the board of adjustment. We review de novo the superior court's jurisdiction. *Moulton v. Napolitano,* 205 Ariz. 506, ¶ 1, 73 P.3d 637, 640 (App. 2003).

¶ 15 Section 9–462.01, A.R.S., authorizes municipalities to regulate the use of property through legislative ordinance. A city's zoning administrator is responsible for enforcing zoning ordinances, and its board of adjustment is responsible for hearing appeals from decisions of the zoning administrator. A.R.S. § 9–462(A)(1), (4). Specifically, A.R.S. § 9–462.06(G)(1) requires the board of adjustment to "[h]ear and decide appeals in which it is alleged there is an error in an order, requirement or decision made by the zoning administrator in the enforcement of a zoning ordinance adopted pursuant to this article." Once the board has rendered a decision, an aggrieved party may obtain appellate review by "fil[ing] a complaint for special action in the superior court to review the . . . board decision." § 9–462.06(K). Pursuant to such review, the superior court is limited to determining whether the board "acted arbitrarily, capriciously or in an abuse of its discretion," *Pingitore v. Town of Cave Creek,* 194 Ariz. 261, ¶ 18, 981 P.2d 129, 132 (App.1998), and "reviews the record before the board when the board made the decision," *Austin Shea (Ariz.) 7th St. & Van Buren, L.L.C. v. City of Phoenix,* 213 Ariz. 385, ¶ 29, 142 P.3d 693, 700 (App.2006).

¶ 16 In this case, after the zoning administrator denied the permit application for space 27 in January 2010, Stagecoach Trails ap-

---

trator did not include this ground for denying the application in the July letter.

pealed the decision to the board of adjustment before seeking relief in superior court, as required by §§ 9–462(A)(1) and 9–462.06(G)(1), (K). We therefore agree with the parties that the court had jurisdiction over the original special-action complaint. We disagree with Stagecoach Trails, however, that the superior court also had jurisdiction over the issues raised in the supplemental special-action complaints.

¶ 17 The board of adjustment considered and affirmed the zoning administrator's January denial of the application on the ground that space 27 did not comply with § 16 (1998) and was not a legal nonconforming use with respect to that section under § 9–462.02 and B.Z.R. § 18. Consequently, whether space 27 violated other regulations, including the former version of § 16, and whether it was nevertheless a nonconforming use with respect to those regulations, was not part of the controversy before the board of adjustment and therefore could not be "reviewed" by the superior court pursuant to § 9–462.06(K). *See Gannett Outdoor Co. of Ariz. v. City of Mesa,* 159 Ariz. 459, 464, 768 P.2d 191, 196 (App.1989). Accordingly, once the court invalidated § 16—the basis of the board's rejection of Stagecoach Trails' application—it reached the limits of its jurisdiction and had no authority to consider additional bases for the zoning administrator's denial of the permit that had not been presented to the board. *See Mountain View Pioneer Hosp. v. Emp't Sec. Comm'n,* 107 Ariz. 81, 85, 482 P.2d 448, 452 (1971) (superior court lacks jurisdiction if party failed to follow statutory administrative procedures); *Hamilton v. State,* 186 Ariz. 590, 593, 925 P.2d 731, 734 (App.1996) (same); *Estate of Bohn v. Waddell,* 174 Ariz. 239, 245–46, 848 P.2d 324, 330–31 (App.1992) (same).

¶ 18 Stagecoach Trails argues that information about whether space 27 had been a nonconforming use before the enactment of § 16 (1998)—an issue that became relevant only upon the invalidation of § 16—had been presented to the board of adjustment, and the superior court therefore had jurisdiction to address the question. Stagecoach Trails points to the January letter, in which the zoning administrator stated, "Each building in existence at the time the Zoning Regulations were adopted was considered a Non-Conforming Use." Stagecoach Trails also refers to statements by the city attorney at the board of adjustment hearing suggesting that the spaces had become nonconforming with the 1998 amendment.[4] But we disagree with Stagecoach Trails' suggestion that these statements by the city established that space 27 had become nonconforming in 1998, even if that was the assumption of the parties at that time. More importantly, the record shows that the issue actually before the board of adjustment was whether space 27[5] was a nonconforming use after 1998 because the focus of the hearing was the putatively valid § 16. Whether the space had been a legal use before 1998 was not an issue until the superior court declared § 16 (1998) invalid.

¶ 19 For these reasons, once the superior court had ruled on the original special-action complaint and declared § 16 invalid, it should have entered judgment in favor of Stagecoach Trails and concluded the case. Any additional reasons for denying the permit that became relevant thereafter were subject to normal administrative procedures under § 9–462.06. *See Gannett Outdoor Co.,* 159 Ariz. at 464, 768 P.2d at 196. To conclude otherwise would ignore the statutory requirements, effectively eliminate the function of

---

**4.** Stagecoach Trails quotes a portion of the minute entry from the board hearing, which reads, "He [the city attorney] agreed that the 50 spaces had been legal since the 1970s, but ... since the adopted ordinance in 1998 ... the spaces became non-conforming." But this mischaracterizes the city attorney's statement. He actually said:

> There are a couple of points, though, that have been misrepresented here tonight, throughout the night. And one of them is that these spaces have been legal since the 70s, have been

consistently legal. What we know, and what the evidence shows, is that since the adoption of § 16 in 1998, the spaces at this mobile home court, as well as others, are not in compliance with the minimum area requirements.

**5.** That we discuss the issue of nonconforming use by referring to space 27 and not to the park as a whole is only for the sake of convenience; we make no determination on the merits of whether the individual spaces or the park as a whole constitute a nonconforming use.

the board of adjustment, and deprive the parties and the courts of the board's review and "specialized expertise."[6] *Sw. Soil Remediation, Inc.*, 201 Ariz. 438, ¶ 16, 36 P.3d at 1212; *see also Hatch v. Ariz. Dep't of Transp.*, 184 Ariz. 536, 540, 911 P.2d 542, 546 (App.1995) (circumstances arising after administrative hearing not properly before superior court; contrary ruling would eliminate function of administrative hearing officer). We recognize the court agreed to consider the issues raised in the supplemental complaints in an effort to expedite the resolution of this case, avoid further time-consuming proceedings before the board, and "promote judicial economy." Ironically, the result has been the opposite as this litigation has been protracted unnecessarily. The board's function simply cannot be usurped by the superior court.

¶ 20 Stagecoach Trails also claims the result we reach today will set a "dangerous precedent" by allowing governmental entities "a second bite at the apple" and "to continually invent new reasons to deny a permit until the applicant gives up or runs out of money." We disagree on several grounds. First, because the superior court reached the limit of its jurisdiction when it reviewed the board of adjustment decision and invalidated § 16, we do not reach the question of whether the city could reevaluate the permit application for space 27. Second, even if that issue was properly before us, the spectre of unending administrative denials has little substance because our decision rests on the specific facts of this case, in which, as we have noted, the invalidation of § 16 necessarily changed the circumstances surrounding the zoning administrator's evaluation of Stagecoach Trails' permit application. Our decision does not give municipalities license to perpetually assert new reasons for denying a permit when the previously asserted reasons have been overruled, nor would we condone such actions. But when, as in this case, the specifically applicable ordinance is declared invalid, the city may have the authority, if not a continuing duty as it asserts, to reevaluate the permit application to determine whether it complies with whatever provisions remain in effect. *See* A.R.S. §§ 9–462.02(C) (municipality may issue citation for structure zoning violation up to two years after discovery), 9–462.05(B) (authorizing municipality to prevent, restrain, correct, or abate zoning violations); *cf. City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶¶ 67–68, 181 P.3d 219, 238 (App.2008) (government may be estopped from enforcing zoning ordinance "'only when the public interest will not be unduly damaged and when [estoppel] will not substantially and adversely affect the exercise of governmental powers'"), *quoting Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, ¶ 40, 959 P.2d 1256, 1269 (1998). That the zoning administrator reconsidered Stagecoach Trails' application under these particular circumstances can hardly be considered a portent of governmental excess.

**Mandamus Relief**

¶ 21 The city also contends the superior court erred in granting mandamus relief. Because we conclude the court lacked jurisdiction over issues raised by the July and September letters denying Stagecoach Trails' permit application, we necessarily reverse the court's mandamus order relating to those issues. However, because the January denial was properly before the court, we address the merits of the mandamus order to the extent it related to the invalidation of § 16.

¶ 22 Two types of special action exist in Arizona, the first of which "is known simply as a special action [and] encompasses the traditional writs of certiorari, mandamus, and prohibition." *Circle K Convenience Stores v. City of Phoenix*, 178 Ariz. 102, 103, 870 P.2d 1198, 1199 (App.1993); *see also Jones v. Paniagua*, 221 Ariz. 441, ¶¶ 23–24, 212 P.3d 133, 139–40 (App.2009). Such spe-

---

**6.** Although Stagecoach Trails asserts "[t]here [i]s no doubt how the [board of adjustment] would rule," its argument is undercut by the record, which, as the city points out, shows the board deliberated at some length in reviewing the zoning administrator's January denial and was not unanimous in its ruling. The board has not yet decided the question whether space 27—or the park as a whole—constitutes a nonconforming use with respect to regulations other than § 16 (1998), and nothing suggests the board would not deliberate as thoroughly on this issue as on the one previously before it.

cial actions are governed by Rule 1(a), Ariz. R.P. Spec. Actions. *Circle K*, 178 Ariz. at 103, 870 P.2d at 1199. A statutory special action, on the other hand, is created by a statute other than A.R.S. §§ 12–2001 or 12–2029, that expressly authorizes proceedings under certiorari, mandamus, or prohibition. Ariz. R.P. Spec. Actions 1(b). "Unlike special actions, statutory special actions 'are not at all discretionary and ... are not subordinate to a right of appeal—they are the right of appeal.'" *Circle K*, 178 Ariz. at 103, 870 P.2d at 1199, *quoting* Ariz. R.P. Spec. Actions 1 bar committee note (b); *see also* Ariz. R.P. Spec. Actions 1(b) (governing statutory special actions).

¶ 23 As in *Circle K*, this case involves a statutory special action, rather than a special action, because § 9–462.06(K) "expressly authorizes" the action. 178 Ariz. at 103, 870 P.2d at 1199; *U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 213, 772 P.2d 33, 36 (App.1989). Also as in *Circle K*, the nature of the relief sought in superior court was certiorari, "which provides relief 'when an inferior tribunal, board or officer, exercising judicial functions, has exceeded its jurisdiction'" or erroneously applied the law. 178 Ariz. at 103, 870 P.2d at 1199, *quoting* § 12–2001; *see also U.S. Parking Sys.*, 160 Ariz. at 213, 772 P.2d at 36 (although zoning administrator and board applied zoning ordinance incorrectly, appellant entitled to reversal, not mandamus relief). Nothing in § 9–462.06(K) permits the court to issue a writ of mandamus or enter an order "in the nature of mandamus"; that statute only authorizes a court to affirm, reverse, or modify the board of adjustment's decision. Accordingly, A.R.S. § 12–2030, which provides for attor-ney-fee awards in mandamus actions, is not applicable to this statutory special action. *Circle K*, 178 Ariz. at 103, 870 P.2d at 1199.[7]

¶ 24 Nor is it material that Stagecoach Trails styled its claim for declaratory and mandamus relief as separate from its appeal from the board of adjustment by alleging them in different counts of its special-action complaint. At bottom, this case does not involve "the failure of an official to perform a ministerial act," *U.S. Parking Sys.*, 160 Ariz. at 213, 772 P.2d at 36, as the zoning administrator duly processed the permit application for space 27 in January 2010. Rather, it involves a challenge to the interpretation and application by the zoning administrator and board of adjustment of the applicable regulations. Accordingly, as discussed above, the entire action is in the nature of certiorari, not mandamus. We therefore conclude the trial court erred in granting mandamus relief and awarding Stagecoach Trails attorney fees pursuant to § 12–2030.[8]

## Other Issues

¶ 25 Our resolution of this case makes it unnecessary to consider the other issues presented in this appeal.

### Attorney Fees on Appeal

¶ 26 The city seeks its attorney fees on appeal; however, it provides no authority entitling it to fees. *See Roubos v. Miller*, 214 Ariz. 416, ¶ 21, 153 P.3d 1045, 1049 (2007) (party requesting attorney fees required to "state the statutory or contractual basis for the award"). We therefore deny its request. The city is entitled to its costs on appeal,

---

7. At oral argument before this court, Stagecoach Trails argued for the first time the superior court's award of attorney fees pertaining to its statutory appeal was supported by *Motel 6 Operating Ltd. Partnership v. City of Flagstaff*, 195 Ariz. 569, ¶¶ 15–17, 991 P.2d 272, 275 (App. 1999) (upholding attorney-fee award pursuant to § 12–2030 where plaintiffs challenged city signage code provision that conflicted with state law). That case, however, does not appear to have involved an administrative appeal or a statutory special action pursuant to § 9–462.06(K), as is the case here. More importantly, even if analogous, we find unpersuasive the *Motel 6* court's virtually nonexistent analysis on the rele-vant point and, in particular, its failure to address or even acknowledge *Circle K* or *U.S. Parking Systems*. *See id.* ¶¶ 16–17.

8. Because Stagecoach Trails had successfully challenged the board's ruling, we do not disturb the superior court's award of costs. *See* A.R.S. § 12–341; *see also Henry v. Cook*, 189 Ariz. 42, 43, 938 P.2d 91, 92 (App.1996) (party who succeeds on some, albeit fewer than all, claims "sufficiently successful" to recover all allowable costs); *Ayala v. Olaiz*, 161 Ariz. 129, 132, 776 P.2d 807, 810 (App.1989) (party obtaining partial success entitled to all taxable costs).

subject to compliance with Rule 21, Ariz. R. Civ.App. P.

**Disposition**

¶ 27 For the reasons stated, we reverse the superior court's denial of the city's "Motion to Dismiss Supplemental Special Action Complaint and Second Supplemental Special Action Complaint," reverse the grant of mandamus relief, and vacate the award of attorney fees. We affirm the superior court in all other respects, including its finding that B.Z.R. § 16 (1998) is invalid, which was not challenged on appeal, and consequently affirm the award of taxable costs to Stagecoach Trails.

CONCURRING: GARYE L. VÁSQUEZ, Presiding Judge and VIRGINIA C. KELLY, Judge.